1    J. Randall Jones, Esq. (#1927)
     **Kemp, Jones & Coulthard, LLP**
2    3800 Howard Hughes Parkway
     Seventeenth Floor
3    Las Vegas, Nevada 89169
     Telephone: (702) 385-6000
4    Facsimile:  (702) 385-6001

5    Patrick W. Powers, Esq.
     Peyton J. Healey, Esq.
6    **Meredith Mathews**
     8150 North Central Expressway #1575
7    Dallas, Texas 75206

8    Willie C. Briscoe, Esq.
     **The Briscoe Law Firm**
9    8117 Preston Road #300
     Dallas, Texas 75225
10   *Attorneys for Plaintiffs*
     *Rene A. Freely and Brian Freely*

11

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

UNITED STATES DISTRICT COURT

12

DISTRICT OF NEVADA

13

14

| | |
|---|---|
| 15 RENE A. FREELY AND BRIAN FREELY, individually and on behalf of all those similarly 16 situated, | Case No.: Dept. No.: |
| 17              Plaintiffs, 18 vs. | **SHAREHOLDER DERIVATIVE COMPLAINT** |
| 19 JODY LINDELL, JOHN MCLAUGHLIN, PAUL SANDMAN, HAROLD SELICK, PH.D., DAVID 20 W. GRYSKA , | **DEMAND FOR JURY TRIAL** |
| 21             Defendants. 22 -and- 23 PDL BIOPHARMA, INC. 24            Nominal Defendant. | |

25                                   **INTRODUCTION**

26         1.      Plaintiffs, by and through their attorneys, bring this action derivatively on

27   behalf of nominal defendant PDL Biopharma, Inc. ("PDL" or the "Company"). This

28

1   Complaint is based on personal knowledge as to themselves, and as to all other matters

2   based upon the investigation conducted by their attorneys, which included, among other

3   things, a review of filings with the United States Securities and Exchange Commission

4   ("SEC"), documents, analyst reports, news reports, press releases, and other publicly-

5   available information regarding the Company. This action brought on behalf of the

6   Company against the members of its Board of Directors ("Board") and/or certain of its

7   executive officers seeking to remedy Defendants' breaches of fiduciary duties and other

8   violations of the law that occurred from November 6, 2013 and September 16, 2014 (the

9   "Class Period").

10      2.      PDL BioPharma manages a portfolio of patents and royalty assets. The

Company is involved in the humanization of monoclonal antibodies and the discovery of

a new generation of targeted treatments for cancer and immunologic diseases. The

Company was formerly known as Protein Design Labs, Inc. and changed its name to PDL

BioPharma, Inc. in 2006. PDL BioPharma, Inc. was founded in 1986, is headquartered in

Incline Village, Nevada, and trades on the NASDAQ Global Select Market

("NASDAQ") under the ticker symbol "PDLI."

      3.      The Company owns patents in the United States and elsewhere, covering

the humanization of antibodies, which the Company refers to as Queen et al. patents. The

Queen et al. patents cover, among other things, humanized antibodies, methods for

humanizing antibodies, polynucleotide encoding in humanized antibodies and methods of

producing humanized antibodies. However, final patent expiry for the Queen et al.

patents is set for December 2014, jeopardizing the Company's ability to pay dividends to

its shareholders going forward.

4. Recently, however, the Company has announced the strategic decision to continue its operations post expiration of the Queen et al. patents and to continue the strategy of pursuing new income generating assets so as to extend its ability to pay dividends to its shareholders.

5. As part of the Company's ongoing strategy, on October 21, 2013, the Company issued a press release announcing the acquisition of the rights to receive royalties and milestones payable on sales of Type 2 diabetes products licensed by Depomed in exchange for a $240.5 million cash payment. Pursuant to the transaction, PDL BioPharma would receive all royalty and milestone payments due under the agreements until it has received payments equal to two times the cash payment made to Depomed, after which all payments received will be shared evenly between PDL BioPharma and Depomed. At the time of the transaction, the Company classified the acquired asset as an intangible asset.

6. Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was overstating its: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating its operating expenses; (3) the Company failed to properly classify royalty and milestone payments due under an agreement with Depomed; and (4) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

7. On May 12, 2014, the Company filed a Form 10-Q with the SEC reiterating the announced results for the first quarter ended March 31, 2014, and also

disclosing that PDL BioPharma was currently engaged in ongoing discussions with the SEC staff after receiving a comment letter to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013, that requested additional information about the Company's accounting for the royalty purchase and sale agreement with Depomed. At the time, the Company classified the asset as an intangible asset, but was being asked to support its position and explain why it is not a financial asset.

8.      On August 8, 2014, the Company issued a press release announcing that it had filed a Form 12b-25 Notification of Late Filing with the SEC allowing for a five-day extension to file its Quarterly Report on Form 10-Q for the period ended June 30, 2014. According to the press release, the Company could not finalize its financial statements for the quarter ended June 30, 2014, due to additional time necessary to address SEC comments and finalize its review related to the change in the accounting treatment of the acquisition of Depomed royalty rights. As a result of the delay in filing the quarterly report, PDL BioPharma postponed its second quarter earnings release call, originally scheduled for Monday, August 11, 2014.

9.      Finally, on September 16, 2014, after the market closed, the Company filed a Form 8-K with the SEC announcing that on September 11, 2014, PDL BioPharma was orally notified by its independent registered accounting firm, Ernst & Young LLP ("EY") that it was resigning effective September 11, 2014. The resignation was confirmed in a letter delivered to the Company on September 15, 2014.

10.     On this news, PDL's stock plummeted $1.17 per share to close at $8.48 per share on September 17, 2014, a one-day decline of over 12% on heavy trading volume.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2), as Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.   This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in this District, or has sufficient minimum contacts with this forum so as to render the exercise of jurisdiction by the district courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court under 28 U.S.C. §1391(a) because:  (1) one or more defendants either reside in, or maintain executive offices in this District; (2) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred within this District, and (3) Defendants have received substantial compensation in this district by conducting business herein and by engaging in numerous activities that have had an effect in this District.

## PARTIES

15.     Plaintiffs Irene and Brian Freely are citizens of Warwick, Pennsylvania. They are current shareholders of the Company and have been shareholders of the

1    Company throughout the Class Period.   They currently owns 1500 shares of stock and
2    made their first purchase on November 8, 2012.

3        16.     Nominal Defendant PDL Biopharma, Inc. is incorporated in Delaware and
4    maintains its headquarters at 932 Southwood Blvd, Incline Village, Nevada 89451.
5    Defendant may be served at that address.

7        17.     Defendant Jody Lindell ("Lindell") is, and at all relevant times was, a
8    director of the Company.  Lindell was elected to the Board of Directors in March 2009.
9    She serves as chair of the Audit Committee, a member of the Compensation Committee
10   and a member of the Nominating and Governance Committee. She can be served at 932
11   Southwood Blvd, Incline Village, Nevada 89451or wherever she may be found.

12       18.     Defendant John McLaughlin ("McLaughlin") is, and at all relevant times
13   was, a director of the Company. He was elected to the Board of Directors of the
14   Company in October 2008.  He is also the President and CEO of the company and has
15   been since December 18, 2008.  McLaughlin is a member of the Litigation Committee.
16   He can be served at 932 Southwood Blvd, Incline Village, Nevada 89451, or wherever he
17   may be found.

18       19.     Defendant Paul Sandman ("Sandman") is, and at all relevant times was, a
19   director of the Company. He was elected to the Board in October 2008.  He is a member
20   of the Compensation Committee and the Nominating and Governance Committee, as well
21   as being the chair of the Litigation Committee.  He can be served at 932 Southwood
22   Blvd, Incline Village, Nevada 89451or wherever he may be found.

23       20.     Defendant Harold Selick, Ph.D. ("Selick") is, and at all relevant times
24   was, a director of the Company. He was elected to the Board in August 2009.  He is a
25   member of the Audit Committee and the Litigation Committee, and chair of the

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1  Compensation Committee and Nominating and Governance Committees. Selick can be

2  served at 932 Southwood Blvd, Incline Village, Nevada 89451or wherever he may be

3  found.

4      21.    Defendant David W. Gryska ("Gryska") is a director of the Company. He

5  was elected to the Board on March 10, 2014. He is a member of the Audit Committee

6

7  and the Nominating and Governance Committee. He can be served at 932 Southwood

8  Blvd, Incline Village, Nevada 89451or wherever she may be found.

9      22.    The Defendants referenced above in ¶¶ 17 through 21 are collectively

10  referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

13      23.    By reason of their positions as officers and/or directors of the Company,

14  and because of their ability to control the business and corporate affairs of the Company,

15  the Individual Defendants owed the Company and its shareholders the fiduciary

16  obligations of good faith, trust, loyalty, and due care, and were, and are, required to use

17  their utmost ability to control and manage the Company in a fair, just, honest, and

18  equitable manner.    The Individual Defendants were, and are, required to act in

19  furtherance of the best interests of the Company and its shareholders so as to benefit all

20

21  shareholders equally and not in furtherance of their personal interests or benefit.

22      24.    Each director and officer owed to the Company and its shareholders the

23  fiduciary duty to exercise good faith and diligence in the administration of the affairs of

24  the Company and in the use and preservation of its property and assets, and the highest

25  obligations of fair dealing. In addition, as officers and/or directors of a publicly held

26  company, the Individual Defendants had a duty to promptly disseminate accurate and

27  truthful information concerning the Company's revenue, margins, operations,

28

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   performance, management, projections, and forecasts, so that the market price of the
2   Company's stock would be based on truthful and accurate information.

3      25.     The Individual Defendants, because of their positions of control and
4   authority as directors, were able to, and did, directly and/or indirectly, exercise control
5   over the wrongful acts complained of herein, as well as the contents of the various public
6   statements issued by the Company. Because of their executive, managerial, and/or
7   directorial positions within the Company, each of the Individual Defendants had access to
8   adverse, non-public information about the Company's financial condition and operations,
9   and the misrepresentations made relevant thereto.

10      26.     At all times relevant hereto, each of the Individual Defendants was the
11   agent of the other Individual Defendants and of the Company, and was at all times acting
12   within the course and scope of such agency.

13      27.     To discharge their duties, the Individual Defendants were required to
14   exercise reasonable and prudent supervision over the management, policies, practices and
15   controls of the financial affairs of the Company. By virtue of such duties, the Individual
16   Defendants were required to, among other things:

17         a.     manage, conduct, supervise and direct the business affairs of the
18   Company in accordance with all applicable laws;

19         b.     neither violate, nor knowingly permit any officer, director or
20   employee of the Company to violate, applicable laws, rules and regulations;

21         c.     establish and maintain systematic and accurate records and reports
22   of the business and affairs of the Company and procedures for the reporting of the
23   business and affairs to the Board and to periodically investigate, or cause independent
24   investigation to be made of, said reports and records;

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

d. neither engage in self-dealing, nor knowingly permit any officer, director or employee of the Company to engage in self-dealing;

e. ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

f. conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

g. properly and accurately guide investors and analysts regarding the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times; and

h. remain informed regarding how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

28. Each Individual Defendant, by virtue of his position as a director, owed to the Company and its shareholders the fiduciary duties of loyalty, good faith, the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants alleged herein involves a violation of their obligations as

1  directors of the Company, the absence of good faith on their part, and a reckless disregard

2  for their duties to the Company and its shareholders that the Individual Defendants were

3  aware, or should have been aware, posed a risk of serious injury to the Company.

4

5       29.     The Individual Defendants breached their duties of loyalty and good faith

6  by allowing Defendants to cause, or by themselves causing, the Company to misrepresent

7  its financial results and prospects, as detailed herein, and by failing to prevent employees

8  and/or officers of the Company from taking such illegal actions. In addition, the

9  Company is now the subject of class action litigation alleging violation of federal

10  securities laws, which necessitates the Company to incur excess costs arising from the

11  Individual Defendants' wrongful course of conduct.

12            **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

13       30.     In committing the wrongful acts alleged herein, the Individual Defendants

14  have pursued, or joined in the pursuit of, a common course of conduct, and have acted in

15  concert with, and conspired with, one another in furtherance of their common plan or

16

17  design. In addition to the wrongful conduct herein alleged as giving rise to primary

18  liability, the Individual Defendants further aided and abetted and/or assisted each other in

19  breach of their respective duties.

20       31.     During all times relevant hereto, the Individual Defendants collectively

21
and individually initiated a course of conduct that was designed to and did:
22

23       (a)     Conceal the fact that the Company was improperly misrepresenting
         its financial results in order to allow defendants to artificially inflate the
24       price of the Company's shares;

25       (b)     Maintain the Individual Defendants' executive and directorial
         positions at the Company and the profits, power, and prestige that the
26       Individual Defendants enjoyed as a result of these positions; and

27
         (c)     Deceive the investing public, including shareholders of the
28       Company, regarding the Individual Defendants' management of the

Company's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financial condition that had been misrepresented by the Individual Defendants throughout the Relevant Period.

32.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

33.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct during the Relevant Period. During this time, the Individual Defendants caused the Company to conceal material facts, misrepresent its financial results, and violate applicable laws. In addition, the Individual Defendants also made other specific, false statements about the Company's financial performance and future business prospects, as alleged herein.

34.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things: (1) to disguise the Individual Defendants' breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment; (2) to conceal adverse information concerning the Company's operations, financial condition, and future business prospects; and (3) to artificially inflate the price of the Company's stock so that the Individual Defendants could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

35.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise, and/or common course of conduct alleged herein.

36. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs alleged herein. In taking such actions to substantially assist the commission of the wrongdoing alleged herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing.

## SUBTANTIVE ALLEGATIONS

### Background

37. PDL is a biopharmaceutical company focused on intellectual property asset management, investing in income generating assets and maximizing the value of its patent portfolio and related assets. PDL pioneered the humanization of monoclonal antibodies, and by doing so, enabled the discovery of a new generation of targeted treatments for cancer and immunologic diseases. The Company receives royalties based on sales of humanized antibody products marketed today and may also receive royalty payments on additional humanized antibody products that are manufactured or launched before final patent expiry in December 2014 or which are otherwise subject to a royalty for licensed know-how under the Company's agreements. Under PDL's current licensing agreements, the Company is entitled to receive a flat-rate or tiered royalty based upon licensees' net sales of covered antibodies.

38. The Company owns patents covering the humanization of antibodies, which the Company refers to as Queen et al. patents. The Queen et al. patents cover, among other things, humanized antibodies, methods for humanizing antibodies, polynucleotide encoding in humanized antibodies and methods of producing humanized antibodies. However, final patent expiry for the Queen et al. patents is set for December

1   2014, jeopardizing the Company's ability to pay dividends to its shareholders going

2   forward.

3     39. Recently, however, the Company announced the strategic decision to

4   continue its operations post expiration of the Queen et al. patents and to continue the

5   strategy of pursuing new income generating assets so as to extend its ability to pay

6   
7   dividends to its shareholders.

8     40. In an effort to move forward on that strategy, on October 21, 2013, the

9   Company issued a press release announcing the acquisition of the rights to receive

10   royalties and milestones payable on sales of Type 2 diabetes products licensed by

11   Depomed in exchange for a $240.5 million cash payment. As part of that transaction,

12   PDL would receive all royalty and milestone payments due under the agreements until it

13   has received payments equal to two times the cash payment made to Depomed, after

14   which all payments received will be shared evenly between PDL and Depomed. At the

15   time of the transaction, the Company classified the acquired asset as an intangible asset.

17   **Materially False and Misleading Statements Issued During the Period**

18     41. On November 6, 2013, the first day of the Class Period, the Company

19   issued a press release announcing the financial results for the third quarter and nine

20   months ended September 30, 2013. The press release stated, in part:

22     Total revenues for the third quarter of 2013 increased 14 percent to $97.3
million from $85.2 million reported in the third quarter of 2012. For the
first nine months of 2013, total revenues increased 15 percent to $332.8
23   million from $288.5 million reported in the comparable period of 2012.

25     Royalty revenues for the third quarter of 2013 are based on second quarter
2013 product sales by PDL's licensees. The year- to-date royalty revenue
growth is driven by increased sales of Avastin®, Herceptin®, Lucentis®,
26   Perjeta®, Kadcyla®, and Actemra® by PDL's licensees in the fourth
quarter of 2012 and first and second quarters of 2013. Net sales of
27   Avastin, Herceptin, Lucentis, Xolair®, Perjeta, and Kadcyla are subject to
28   a tiered royalty rate except in the case when the product is ex-U.S.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

manufactured and sold, in which case it is subject to a flat three percent royalty rate.

General and administrative expenses for the third quarter of 2013 were $7.9 million, compared with $5.6 million in the same quarter of 2012. For the nine months ended September 30, 2013, general and administrative expenses were $21.9 million compared to $17.7 million in the comparable period of 2012. The increase in expenses for both the quarter and nine months ended September 30, 2013, was a result of increased legal expenses related to ongoing litigation.

Net income for the third quarter of 2013 was $56.2 million, or $0.36 per diluted share, as compared with net income of $48.6 million, or $0.32 per diluted share, in the same quarter of 2012. The increase in net income in the third quarter is primarily due to a 13 percent increase in royalty revenues. Net income for the first nine months of 2013 was $203.4 million, or $1.31 per diluted share, as compared with net income of$162.3 million, or $1.08 per diluted share, in the same period of 2012.

Net cash provided by operating activities in the first nine months of 2013 was $209.7 million, compared with $158.6 million for the first nine months of 2012. At September 30, 2013, PDL had cash, cash equivalents and investments of $326.5 million, compared with $148.7 million at December 31, 2012. The increase was primarily attributable to net cash provided by operating activities of $209.7 million and repayment of notes receivable of $58.1 million, offset in part by payment of dividends of $62.9 million and cash advanced on notes receivable of $48.7 million.

"We are gratified by the continued success of our asset acquisition strategy, including the four additional transactions completed in the past month, and believe that—with ROI at top-of-mind—we are continuing to add long term value for the company and our stockholders," stated John P. McLaughlin, president and chief executive officer of PDL. "Our goal is to be the financial partner of choice to leading life science companies and other institutions seeking to access non-dilutive capital, and we are actively looking to expand our portfolio. With the conclusion of the four recent transactions, PDL has deployed $368 million in capital in 2013 and $496 million in total to acquire new income generating assets to support our dividend payments."

42. That same day, the Company filed a Form 10-Q with the SEC which was signed by Defendant McLaughlin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant

1    McLaughlin, stating that the financial information contained in the Form 10-Q was

2    accurate and disclosed any material changes to the Company's internal control over

3    financial reporting.

4        43.    On March 3, 2014, the Company issued a press release announcing results

5    for the fourth quarter and full year ended December 31, 2013. The press release stated, in

6    part:

7

8        Total revenues in 2013 increased 18 percent to $442.9 million from
         $374.5 million in 2012. For the fourth quarter of2013, total revenues were
9        $110.1 million, compared to $86.0 million in the fourth quarter of 2012.
         Royalty revenues for the fourth quarter of 2013 are based on third quarter
10       2013 product sales by PDL's licensees to the Queen et al. patents and on
         Depomed's Glumetza® royalties related to October and November 2013
11       U.S. sales. PDL recognized $11.2 million in revenue related to the
         Depomed royalties in the fourth quarter of 2013.
12

13       The full year 2013 royalty revenue growth over the full year 2012 is
         driven by increased sales of Avastin®, Herceptin®, Lucentis®, Xolair®,
14       Perjeta®, Kadcyla®, Tysabri®, and Actemra® by PDL's licensees, along
         with the addition of the royalty payments from PDL's purchase of
15       Depomed's diabetes-related royalties. Net sales of Avastin, Herceptin,
         Lucentis, Xolair, Perjeta, and Kadcyla were subject to a tiered royalty rate
16       except in the case when the product is ex-U.S. manufactured and sold, in
         which case it was subject to a flat three percent royalty rate. Under the
17       terms of a settlement agreement, entered into on January 31, 2014, and
         effective retroactively to August 15, 2013, Genentech will pay a fixed
18       royalty rate of 2.125 percent on worldwide sales of all licensed products,
         as compared to the previous tiered royalty rate in the U.S and the fixed
19       rate on all ex-U.S. based manufactured and sold licensed products. The
         retroactive change in royalty rate from August 15, 2013, to December 31,
20       2013, will be recognized as royalty revenue by PDL in the first quarter of
         2014.
21

22       Operating expenses in 2013 were $35.4 million, compared with $25.5
         million in 2012. The increase in expenses for the year ended December 31,
23       2013, was a result of the amortization for the Depomed intangible asset, an
         increase in professional services for other income generating assets, and
24       increased legal expenses related to the settled litigation. For the fourth
         quarter of 2013, operating expenses were $13.5 million compared with
25       $7.7 million for the same period in 2012. The increase in expenses for the
         quarter ended December 31, 2013, was a result of the Depomed intangible
26       asset amortization.

27

28

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 · Fax (702) 385-6001
kjc@kempjones.com

Net income in 2013 was $264.5 million, or $1.66 per diluted share, as compared with net income in 2012 of $211.7 million, or $1.45 per diluted share. Net income for the fourth quarter of 2013 was $61.1 million, or $0.39 per diluted share, as compared with net income of $49.4 million for the same period of 2012, or $0.34 per diluted share. The increase in net income in the fourth quarter is primarily due to a 27 percent increase in royalty revenues.

Net cash provided by operating activities in 2013 was $270.9 million, compared with $210.2 million in 2012. At December 31, 2013, PDL had cash, cash equivalents and investments of $99.5 million, compared with $148.7 million at December 31, 2012. The decrease was primarily attributable to the purchase of the Depomed intangible asset of $241.3 million, cash advanced on notes receivable of $148.7 million, payment of dividends of $84.0 million, offset in part by net cash provided by operating activities of $270.9 million and repayment of notes receivable of $58.1 million.

44.     That same day, the Company filed a Form 10-K with the SEC which was signed by Defendant McLaughlin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-K contained signed SOX certifications by Defendant McLaughlin, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     On May 12, 2014, the Company issued a press release announcing results for the first quarter ended March 31, 2014. The press release stated, in part:

Total revenues for the first quarter of 2014 increased 52 percent to $139.7 million from $91.8 million in the first quarter of2013. Royalty revenues for the first quarter of 2014 are based on fourth quarter 2013 product sales by PDL's licensees to the Queen et al. patents, royalty payments from PDL's purchase of Depomed's diabetes- related royalties, and include a one-time $5 million retroactive payment from Genentech related to our settlement agreement.

The first quarter 2014 royalty revenue growth over first quarter of 2013 is driven by increased sales of Avastin®, Herceptin®, Xolair®, Perjeta®, Kadcyla®, and Actemra® by PDL's licensees, the addition of $23.6 million in royalty revenue from PDL's purchase of Depomed's diabetes-related royalties, the $5 million retroactive payment from Genentech, and an increase in royalties from the Genentech settlement as a result of a

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kic@kempjones.com

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1

2

3

fixed royalty rate of 2.125 percent on worldwide sales of all licensed products in 2014, as compared to the previous lower blended rate based upon a tiered royalty rate in the U.S. and the fixed rate on all ex-U.S based manufactured and sold licensed products.

4

5

6

7

Operating expenses in the first quarter of 2014 were $16.5 million, compared with $7.2 million in the first quarter of 2013. The increase of expenses in the quarter ended March 31, 2014, was a result of the non-cash amortization expense of $11.9 million for the Depomed royalty and milestone purchase, offset in part by decreased legal expenses from the settlement of legal proceedings with Genentech.

8

9

10

Net income in the first quarter of 2014 was $72.9 million, or $0.44 per diluted share, as compared with net income in the first quarter of 2013 of $53.5 million, or $0.36 per diluted share. The increase in net income in the first quarter is primarily due to the increase in royalty revenues.

11

12

13

14

15

16

17

18

Net cash provided by operating activities in the first quarter of 2014 was $91.8 million, compared with $52.9 million in the first quarter of 2013. At March 31, 2014, PDL had cash, cash equivalents and investments of $337.6 million, compared with $99.5 million at December 31, 2013. The increase was primarily attributable to proceeds from the issuance of convertible notes of $300.0 million, proceeds from the issuance of warrants of $11.4 million, and net cash provided by operating activities of $91.8 million, offset in part by cash advanced on notes receivable of $50.0 million, purchase of call options of $31.0 million, repurchase of convertible notes of $29.9 million, payment of dividends of $24.0 million, repayment of a portion of the term loan of $18.8 million, and payment of debt issuance costs related to the issuance of convertible notes of $9.8 million.

19

46.     That same day, the Company filed a Form 10-Q with the SEC which was

20     signed by Defendant McLaughlin, and reiterated the Company's previously announced

21     quarterly financial results and financial position. In addition, the Form 10-Q contained

22     signed SOX certifications by Defendant McLaughlin, stating that the financial

23

24     information contained in the Form 10-Q was accurate and disclosed any material changes

to the Company's internal control over financial reporting.

25

26     47.     The statements referenced in ¶¶ 41 - 46 above were materially false and/or

27     misleading because they misrepresented and failed to disclose the following adverse facts

28     pertaining to the Company's business, operations, prospects and performance, which

were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was overstating its: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating operating expenses; (3) the Company failed to properly classify royalty and milestone payments due under an agreement with Depomed; and (4) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Slowly Emerges**

48. In the Form 10-Q filed with the SEC on May 12, 2014, the Company disclosed that PDL was currently engaged in ongoing discussions with the SEC staff after receiving a comment letter to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 that requested additional information about the Company's accounting for the royalty purchase and sale agreement with Depomed. At the time, the Company classified the asset as an intangible asset, but was being asked to support its position and explain why it is not a financial asset.

49. On August 8, 2014, the Company issued a press release announcing that it had filed a Form 12b-25 Notification of Late Filing with the SEC allowing for a five-day extension to tile its Quarterly Report on Form 10-Q for the period ended June 30, 2014. According to the press release, the Company could not finalize its financial statements for the quarter ended June 30, 2014, due to additional time necessary to address SEC comments and finalize its review related to a change in the accounting treatment of the acquisition of Depomed royalty rights. As a result of the delay in filing the quarterly report, PDL postponed its second quarter earnings release call, originally scheduled for Monday, August 11, 2014.

50.     On August 18, 2014, the Company issued press release announcing delayed results for the second quarter and six months ended June 30, 2014. The press release stated, in part:

> Total revenues for the second quarter of 2014 increased approximately 10 percent to $162.8 million from $148.5 million in the second quarter of 2013. Revenues for the second quarter of 2014 include royalty payments from PDL's licensees to the Queen et al. patents, net royalty payments from Depomed, the change in fair value of the Depomed asset, and interest revenue from notes receivable debt financings to late stage healthcare companies. The revenue growth in the second quarter of 2014 is offset by the timing differences of a flat royalty rate on the Genentech related products in 2014 versus a tiered rate in 2013.
>
> The second quarter 2014 royalty payment received from Genentech products was for worldwide net sales in the first quarter 2014. Prior to 2014, PDL's second quarter Genentech royalty revenue was historically the highest amount of any quarter because the applicable tiered royalty rate was three percent. However, as aggregate Genentech net sales increased with each subsequent quarter, the tiered royalty rate declined, dropping to one percent in PDL's third, fourth and first quarters. As a result, the blended royalty rate for all of 2013 for Genentech products was 1.9 percent. The settlement with Genentech resulted in a single fixed royalty rate of 2.125 percent, which results in more uniform royalty revenue on a quarter to-quarter basis in the current fiscal year. Thus, this decrease in Queen et al. related royalties between the second quarters of 2013 and 2014 is a function of the transition to the new fixed royalty rate, which new royalty rate is anticipated to result in greater royalties to PDL when measured on an annual basis.
>
> In the second quarter of 2014, PDL recorded a change in accounting related to its acquisition of royalty rights from Depomed. As part of this change, PDL has elected to measure these assets at fair value. The change in fair value along with net cash royalties received from Depomed is currently presented as a component of "royalty rights - change in fair value" in PDL's income statements. Of the $34.5 million recognized in royalty rights for the quarter ended June 30, 2014, $25.8 million were net cash royalty receipts from Depomed and $8.7 million was the change in fair value including prior period adjustments. In recognition of its transitioning business model to acquire new revenue generating assets, the Company reclassified $12.6 million in interest income in the quarter ended June 30, 2014 related to interest from its notes receivable to interest revenue, which compares to $4.9 million in interest revenue for the second quarter of 2013.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

Total revenues for the first six months of 2014 increased 23 percent to $299.6 million, compared with $244.1 million for the first six months of 2013. The increase for the six month period of 2014 over 2013 is primarily driven by the addition of the royalty payments from PDL's purchase of Depomed's diabetes-related royalties, increased royalties in the first two quarters of 2014 related to sales of Xolair®, Kadcyla®, Perjeta®, and Actemra®, along with a higher fixed royalty rate in 2014 over the blended fixed and tiered 2013 rate, a $13.0 million increase in interest revenue related to acquisitions of new revenue generating assets, and a $5.0 million retroactive payment in first quarter of 2014 related to our settlement agreement with Genentech, offset by a higher foreign exchange loss and higher rebate paid to Novartis AG for Lucentis.

Operating expenses in the second quarter of 2014 were $6.9 million, compared with $6.8 million in the second quarter of 2013. Operating expenses in the first six months of 2014 were $11.5 million, compared with $14.0 million in the first six months of 2013. The decrease in operating expenses for the first six months ended June 30, 2014, compared to the first six months ended June 30, 2013, was primarily due to a decrease in litigation legal expenses, partially offset by an increase in acquisition due diligence professional services and compensation.

Net income in the second quarter of 2014 was $92.1 million, or $0.52 per diluted share, as compared with net income in the second quarter of 2013 of $93.7 million, or $0.62 per diluted share. Net income for the first six months of 2014 was $164.9 million, or $0.94 per diluted share, as compared with net income in the first six months of 2013 of $147.2 million, or $0.96 per diluted share.

Net cash provided by operating activities in the first six months of 2014 was $146.2 million, compared with $162.7 million in the first six months of 2013. At June 30, 2014, PDL had cash, cash equivalents and investments of $217.8 million, compared with $99.5 million at December 31, 2013. The increase was primarily attributable to net cash provided by the proceeds from the February 2018 Notes issuance of $300.0 million, proceeds from royalty rights - at fair value of $49.5 million, proceeds from warrant issuances of $11.4 million, and operating activities of $146.2 million, offset in part by cash advanced on notes receivable of $215.0 million, call option purchases of $31.0 million, Series 2012 Notes repurchases of $29.9 million, dividend payments of $48.1 million, term loan principal payments of $37.5 million, royalty right purchases of $15.5 million, and debt issuance costs of $9.8 million related to our February 2018 Notes.

51.    That same day, the Company filed a Form 10-Q with the SEC which was

signed by Defendant McLaughlin, and reiterated the Company's previously announced

quarterly financial results and financial position. In addition, the Form 10-Q contained signed SOX certifications by defendants McLaughlin and Garcia, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

52. The statements referenced in ¶¶ 48 – 51 were misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, prospects and performance, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was overstating: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating operating expenses; and (3) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Full Truth Emerges**

53. On September 16, 2014, after the market closed, the Company filed a Form 8-K with the SEC announcing that on September 11, 2014, PDL was orally notified by its independent registered accounting firm, Ernst & Young, that it was resigning effective September 11, 2014. The resignation was confirmed in a letter delivered to the Company on September 15, 2014.

54. On this news, PDL's stock plummeted $1.17 per share to close at $8.48 per share on September 17, 2014, a one-day decline of over 12%, on heavy trading volume.

55. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

56. Plaintiffs bring this action derivatively in the right, and for the benefit, of the Company to redress injuries suffered, and to be suffered, by the Company as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. The Company is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction in this Court that it would not otherwise have.

57. Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

58. Plaintiffs are a current owner of the Company's common stock and have been the owner of the Company's common stock during the Class Period.

59. At the time that this action was commenced, the Company's Board consisted of the following directors: Defendants Lindell, McLaughlin, Sandman, Selick and Gryska.

60. As a result of the facts set forth herein, Plaintiffs have not made any demand on the Company's Board to institute this action against the Individual Defendants. Such demand would be a futile and useless act with respect to each and every one of the Individual Defendants because they are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

a.     Individual   Defendants   lack   both   the   independence   and disinterestedness required to impartially consider a demand by Plaintiffs.  Individual Defendants have received substantial monetary compensation and other benefits from the Company and cannot be considered independent;

b.     Defendant Lindell receives substantial compensation and stock options from the Company for her position.  Specifically, Lindell earns an annual salary of at least $147,500.  In addition, she receives $50,000 in stock on an annual basis. Accordingly, Lindell has a vested interest in making sure the price of stock is as high as possible. Furthermore, Lindell's position on the Board gives her a certain level of prestige in the business community. Because Lindell has substantial self-interest in the company, she cannot be considered independent in evaluating Plaintiffs' demands.

c.     Defendant McLaughlin is the President and CEO of the Company in addition to sitting on the Board of Directors.  He receives substantial compensation and stock options from PDL for these positions. In Fiscal Year 2013, he earned a total of $2,887,125 in compensation, including stock awards of $201,000. Accordingly, McLaughlin has a vested interest in making sure the price of stock is as high as possible. Furthermore, McLaughlin's position on the Board and as President and CEO gives him a certain level of prestige in the business community.  As a result of his position with the Company, McLaughlin has a substantial level of self-interest in the Company, and the outcome of any potential litigation.  Furthermore, McLaughlin signed many of the misleading documents filed with SEC, subjecting himself to liability for violations of the Securities Exchange Act.  Reasonable doubt exists regarding McLaughlin's ability to be disinterested and independent in evaluating Plaintiffs' demands.

d.     Defendant Sandman receives substantial compensation and stock options from the company. Specifically, Sandman earns an annual salary of at least $155,000. In addition, he receives $50,000 of stock on an annual basis. Accordingly, Sandman has a vested interest in making sure the price of stock is as high as possible. Furthermore, Sandman position on the Board gives him a certain level of prestige in the business community.     Reasonable doubt exists regarding Sandman's ability to be disinterested and independent in evaluating Plaintiffs' demands.

e.     Defendant Selick receives substantial compensation and stock options from the Company for his position. Specifically, Selick earns an annual salary of at least $170,000. In addition, he receives $50,000 of stock on an annual basis. Accordingly, Selik has a vested interest in making sure the price of stock is as high as possible. Furthermore, Selik's position on the Board gives him a certain level of prestige in the business community. Because Selik has substantial self-interest in the Company, he cannot be considered independent in evaluating Plaintiffs' demands.

f.     Defendant Gryska receives substantial compensation and stock options from the Company for her position. Specifically, Gryska earns an annual salary of at least $120,000.00. In addition, he receives $50,000 of stock on an annual basis. Accordingly, Gryska has a vested interest in making sure the price of stock is as high as possible. Furthermore, Gryska's position on the Board gives him a certain level of prestige in the business community. Because Gryska has substantial self-interest in the Company, he cannot be considered independent in evaluating Plaintiffs' demands.

g.     PDL's non-employee directors have received, and continue to receive, substantial compensation in the form of cash and stock option awards. These Defendants are also interested in maintaining their positions on the Board so as to

safeguard their substantial compensation and stock options. Because of this self-interest, demand upon such individuals would be futile.

h.     As members of the Board's Audit Committee, Defendants Lindell, Selick, and Gryska were responsible for reviewing the Company's financial statements and ensuring their accuracy and compliance with the law.  Defendants Lindell, Selick, and Gryska wholly failed to exercise their fiduciary duties the Company in performing the functions required by the audit committee.  Accordingly, demand upon Lindell, Selick, and Gryska would be futile.

i.     Defendants face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith as alleged herein, and are therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

j.     The entire Board and senior management participated in the wrongs complained of herein.  For the reasons described herein, the Company's directors are not disinterested or independent.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and the conduct of its business affairs. Each of the above referenced Defendants breached the fiduciary duties they owed to the Company and its shareholders in that they failed to prevent and correct the dissemination of the Company's false and misleading statements. Thus, the Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome since their actions have subjected the Company to millions of dollars in potential liability for violations of applicable securities laws;

1    k.    Each of the key directors knew of and/or directly benefited from
2  the wrongdoing complained of herein thereby rendering demand futile;

3    l.    The Individual Defendants approved and/or permitted the wrongs
4  alleged herein to have occurred and participated in efforts to conceal or disguise those
5  wrongs from the Company's stockholders or recklessly and/or negligently disregarded
6  the wrongs complained of herein, and are therefore not disinterested parties;
7

8    m.    In order to bring this suit, all of the Company's directors would be
9  forced to sue themselves and persons with whom they have extensive business and
10  personal entanglements, which they will not do, thereby excusing demand;

11    n.    The acts complained of constitute violations of the fiduciary duties
12  owed by the Company's officers and directors and these acts are incapable of ratification;
13

14    o.    Each of the Individual Defendants authorized and/or permitted the
15  false statements disseminated directly to the public and which were made available and
16  distributed to shareholders, authorized and/or permitted the issuance of various of the
17  false and misleading statements, and are principal beneficiaries of the wrongdoing
18  alleged herein, and thus could not fairly and fully prosecute such a suit even if they
19  instituted it;

20

21    p.    Any suit by the Company's current directors to remedy these
22  wrongs would likely expose the Individual Defendants and the Company to further
23  violations of the securities laws that would result in civil actions being filed against one
24  or more of the Individual Defendants; thus, the Individual Defendants are hopelessly
25  conflicted in making any supposedly independent determination whether to sue
26  themselves;

27

28

q.       The Company has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for the Company any part of the damages that the Company suffered and will suffer thereby; and

r.       If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in a class action complaint for violations of securities law, which admissions would impair their defense of the class action and greatly increase the probability of their personal liability in the class action, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. Thus, the Individual Defendants would be forced to take positions contrary to the defenses they will likely assert in the securities class action.

61.      Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiffs, the current Board has failed and refused to seek to recover for the Company for any of the wrongdoing alleged by Plaintiffs herein.

62.      Plaintiffs, moreover, have not made any demand on shareholders of the Company to institute this action since demand would be a futile and useless act for the following reasons:

a.       The Company is publicly held, with 1.2 billion shares outstanding and thousands of shareholders;

b.   Making demand on such a number of shareholders would be impossible for Plaintiffs who has no way of determining the names, addresses, or phone numbers of shareholders; and

c.   Making demand on all shareholders would force Plaintiffs to incur huge expenses, assuming all shareholders could be individually identified.

63.   Furthermore, the conduct alleged herein could not have been the product of good faith business judgment, and each of the Individual Defendants faces a substantial likelihood of liability for breaBrookmang their fiduciary duties because, through their intentional misconduct, they have subjected the Company to substantial damages.   Furthermore, the conduct of the Individual Defendants has subjected the Company to potential liability in connection with a securities fraud class actions entitled *Lee A. Hampe v. PDL Biopharma, Inc., et. al.*, Civ. Action No. 2:14-cv-01526-RCJ-NJK, currently pending in the United States District Court for Nevada.   Through their intentional misconduct, the Individual Defendants have subjected the Company to potential costs, fines, and judgments associated with the securities class action.   Such actions by the Individual Defendants cannot be protected by the business judgment rule. Accordingly, making a pre-suit demand on the Individual Defendants would be futile.

## COUNT I
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION)

64.   Plaintiffs incorporate by reference each of the preceding paragraphs as though they were set forth in full herein.

65.   The Individual Defendants owed a fiduciary duty to the Company to supervise the issuance of the Company's press releases and public filings to ensure that

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1   they were truthful and accurate and that such filings conformed to applicable securities

2   laws. The Individual Defendants, however, breached their fiduciary duties by allowing

3   the Company to issue and disseminate misleading statements and filings.

4

5   66.      As members of the Board, the Individual Defendants were directly

6   responsible for authorizing, permitting the authorization of, or failing to monitor the

7   practices that resulted in violations of applicable laws as alleged herein. Each of the

8   Individual Defendants had knowledge of, actively participated in, approved, and/or

9   acquiesced in the wrongdoing alleged herein or abdicated his or her responsibilities with

10  respect to this wrongdoing. The alleged acts of wrongdoing have subjected the Company

11  to unreasonable risks of losses and expenses.

12  67.      Each of the Individual Defendants' acts in causing or permitting the

13  Company to disseminate material misrepresentations and omissions to the investing have

14  subjected the Company to liability for violations of applicable laws, and therefore were

15  not the product of a valid exercise of business judgment, constituting a complete

16

17  abdication of their duties as officers and/or directors of the Company. As a result of the

18  Individual Defendants' breaches, the Company's reputation in the business community

19  and financial markets has been irreparably tarnished.

20

### COUNT II
21  ### (AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY
### DUTY FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE
22  ### COMPANY)

23  68.      Plaintiffs incorporate by reference each of the preceding paragraphs as

24  though they were set forth in full herein.

25

26  69.      The Individual Defendants owed the Company fiduciary obligations. By

27  reason of such fiduciary obligations, the Individual Defendants specifically owed the

28

Company the highest obligation of good faith, fair dealing, loyalty, and due care, reasonable inquiry, oversight, and supervision.

70. The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight, and supervision by engaging in a sustained and systematic failure to exercise their oversight responsibilities and to ensure that the Company complied with applicable laws, rules, and regulations. As a direct and proximate result of the Individual Defendants' failure to adequately perform their fiduciary obligations, the Company has sustained significant damages monetarily and injury to its corporate image and goodwill.

71. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. Plaintiffs, moreover, have no adequate remedy at law.

## COUNT III
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR GROSS MISMANGEMENT)

72. Plaintiffs incorporate by reference each of the preceding paragraphs as though they were set forth in full herein.

73. The Individual Defendants had a duty to the Company and its shareholders to prudently supervise, manage, and control the operations, business, and internal financial accounting and disclosures of the Company. The Individual Defendants, however, by their actions, and by engaging in the wrongdoing alleged herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of the Company in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence, and candor in the management and administration of the Company's affairs and in the use and preservation of the Company's assets.

74.     During the course of the discharge of their duties, the Individual Defendants were aware of the unreasonable risks and losses associated with their misconduct.  Nevertheless, the Individual Defendants caused the Company to engage in the scheme described herein which they knew had an unreasonable risk of damage to the Company, thus breaBrookmang their duties to the Company.  As a result, the Individual Defendants grossly mismanaged the Company, thereby causing damage to the Company.

## COUNT IV
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR CONTRIBUTION AND INDEMIFICATION)

75.     Plaintiffs incorporate by reference each of the preceding paragraphs as though they were set forth in full herein.

76.     The Company is alleged to be liable to various persons, entities and/or classes by virtue of the facts alleged herein that give rise to Defendants' liability to the Company.

77.     The Company's alleged liability on account of the wrongful acts, practices, and related misconduct alleged arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants, and the Company is entitled to contribution and indemnification from each Individual Defendant in connection with all such claims that have been, are, or may in the future be asserted against the Company by virtue of the Individual Defendants' misconduct.

## COUNT V
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL)

78.     Plaintiffs incorporate by reference each of the preceding paragraphs as though they were set forth in full herein.

79.     The Individual Defendants' conduct, as alleged herein, constituted an abuse of their control over the Company.

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

80. As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable. Plaintiffs, moreover, have no adequate remedy at law.

**COUNT VI**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR**
**WASTE OF CORPORATE ASSETS)**

81. Plaintiffs incorporate by reference each of the preceding paragraphs as though they were set forth in full herein.

82. The Individual Defendants' conduct, as alleged herein, constituted a waste of the corporate assets of the Company.

83. As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable. Plaintiffs, moreover, have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

i. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

ii. Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

iii. Granting such other and further relief as the Court deems just and proper.

. . .

. . .

. . .

. . .

. . .

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

1

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED: October 20, 2014.

KEMP, JONES & COULTHARD, LLP

/s/ J. Randall Jones
J. Randall Jones, Esq. (#1927)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Patrick W. Powers, Esq.
Peyton J. Healey, Esq.
Meredith Mathews
8150 North Central Expressway #1575
Dallas, Texas 75206

Willie C. Briscoe, Esq.
The Briscoe Law Firm
8117 Preston Road #300
Dallas, Texas 75225
*Attorneys for Plaintiffs*
*Rene A. Freely and Brian Freely*
*Attorneys for Plaintiffs*

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com